UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL FREDERICK,

              Plaintiff,           **DECISION AND ORDER**

    -vs-                   **No. 6:10-CV-6527(MAT)**

MICHAEL SHEAHAN, et al.,

              Defendants.
_____

## I.   Introduction

Pro se plaintiff Michael Frederick ("Frederick" or "Plaintiff"), an inmate in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights  while in DOCCS' custody. In his amended complaint [#4][1], Plaintiff names the following individual as being responsible for the constitutional violations alleged: Corrections Officer Mark Vandergrift ("CO Vandergrift"); CO Patrick Murphy ("CO Murphy"); CO Michael Robyck ("CO Robyck"); CO J. Robinson ("CO Robinson"); Corrections Sergeant D. Holton ("Sgt. Holton"); and Acting Superintendent Michael Sheahan ("Acting Supt. Sheahan"). Defendants have filed a motion for summary judgment, which Plaintiff has opposed. For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

_____

[1]
    Citations to [# ] refer to document numbers on this case's CM/ECF docket sheet.

## II.  Factual Background

The following facts—viewed in the light most favorable to Plaintiff—are gleaned from the pleadings and from the parties' submissions in conjunction with Defendants' summary judgment motion. See, e.g., Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995) ("For the purposes of a summary judgment motion, courts are required to view the facts in the light most favorable to the parties opposing the motion and to suspend judgments on credibility.").

In November of 2009, Plaintiff had a verbal "altercation" with Southport Correctional Facility Nurse Deborah Allen. Ten minutes later, he was "threatened" by CO Vandergrift.

On December 2, 2009, Plaintiff and the other inmates locking on C-11 Gallery were ordered to submit to an institutional search. Officer Frisbee, who is not a party to this action, and another, unidentified officer, came to Plaintiff's cell and ordered him to turn around to be handcuffed.

After Plaintiff was handcuffed, the cell door opened, and he waited to follow the officers' commands. Instead, Plaintiff was shoved away from the door and pushed so he fell on the bed. Turning around, Plaintiff saw CO Vandergrift, who stated, "I told you I will be back for you." Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment ("Pl's Decl.") [#58], ¶ 6. CO Vandergrift then turned Plaintiff around and punched him in the

face multiple times, while several officers (CO Murphy, CO Robyck, and CO Robinson) held his ankles, legs, and feet. The officers then began striking Plaintiff on his bare feet with their batons. Plaintiff estimates that this assault lasted for approximately 5 minutes. CO Vandergrift, CO Murphy, CO Robyck, and CO Robinson then brought him to the front of his cell, where CO Vandergrift "wrapped his hand around [Plaintiff's] neck and started choking him until [Plaintiff] passed out." Pl's Decl., ¶ 9.

After that, Plaintiff "remembered being dragged down the company and brought to a shower stall." Id. His injuries were photographed, and he was underwent a medical exam at the facility infirmary. In the section of the "Unusual Incident Report ("UIR")" titled "Medical Report," DOCCS medical staff described Plaintiff's injuries as follows: A 4" by 3" red mark on the left side of his neck with no observed swelling, bruising, pain, welts or open areas; a bloodshot left eye, with no swelling, bruises, or pain noted; complaints of pain in left ankle and left wrist with no sign of injury noted in either area. See UIR at 2, attached as part of Exhibit ("Ex.") A to Defendants' Continuation of Rule 26 Disclosure [#25]. The Court notes that these injuries, observed by DOCCS' medical staff, are not inconsistent with Plaintiff's assertion that he was choked by CO Murphy (the welt on his neck and bloodshot eye) and struck on his ankles and feet with batons (pain in his ankle area). The Court also notes that CO Murphy's description of how the

-3-

event occurred does not account for any of Plaintiff's injuries. According to CO Murphy, he used a "body hold" to force Plaintiff to the back wall after Plaintiff attempted to "head-butt" him. As Plaintiff allegedly resisted, CO Robinson assisted in attempting to restrain Plaintiff, who "went off the bed and onto the floor". Id. CO Robyck responded and applied leg restraints, and Sgt. Holton was called to the area. Id.

CO Murphy subsequently filed a misbehavior report against Plaintiff charging him with attempting to assault staff, violent conduct, and refusing a direct order. Plaintiff states that contrary to the accusations that he tried to head-butt CO Murphy, he did not attempt to assault any of the officers, resist them, or threaten them. Rather, Plaintiff asserts, he laid on his bed and tried to protect his face from the officers' blows.

On December 9, 2009, a Tier III disciplinary hearing was held before Commissioner's Hearing Officer James Esgrow ("CHO Esgrow"). The only non-party witness called was CO Murphy. After finding Plaintiff guilty as charged, CHO Esgrow sentenced him principally to 6 months in the special housing unit ("SHU"), and recommended a loss of 3 months of good time credits. CHO Esgrow's ruling and the sentence were upheld on administrative appeal.

## III. General Legal Principles

### A.   Section 1983

Section 1983 authorizes an individual who has been deprived of a federal right under the color of state law to seek relief through "an action at law, suit in equity, or other proper proceeding for redress." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). Two essential elements comprise a Section 1983 claim: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (citation omitted).

To bring a § 1983 claim against a prison official, a plaintiff must allege that individual's personal involvement; it is not enough to simply assert that the defendant is a "link in the prison chain of command." McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004) (quotation omitted). "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted); accord Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003). Because "respondeat superior liability does not lie against corrections officers in Section 1983 actions[,]" "[a] plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries

-5-

suffered." <u>Bass v. Jackson</u>, 790 F.2d 260, 263 (2d Cir. 1983) (internal citation omitted).

In the Second Circuit, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

B.    **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Initially, the moving party must show that there is "an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Once the moving party has carried its burden, the opposing party must set forth "specific facts showing that there is a genuine issue for trial[,]" FED. R. CIV. P. 56(e), and must introduce evidence beyond the mere pleadings to show that

there is an issue of material fact concerning "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The reviewing court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (citation omitted). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.) (citing Anderson, 477 U.S. at 250-51), cert. denied, 502 U.S. 849 (1991). If, "as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (quotation omitted).

## IV.  Discussion

### A.    Eleventh Amendment Bar to Official Capacity Claims

Defendants moved to dismiss the entire amended complaint because Plaintiff had asserted claims against Defendants in their official capacities, and the Eleventh Amendment bars suits for

damages against state officials acting in their official capacities. See Farid v. Smith, 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."). Plaintiff subsequently filed a motion to amend so as to correct this pleading deficiency, and Defendants did not oppose the motion. The Court granted permission to amend the amended complaint to assert all of the claims against Defendants in their individual capacities. However, the Court agrees with Defendants that to the extent the amended complaint asserts claims against them in their official capacities, such claims are barred by the Eleventh Amendment and are dismissed. See, e.g., Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of plaintiff's claims for damages against all of the individual DOCCS defendants in their official capacities as barred by the Eleventh Amendment).

**B.    Due Process Claim Against CO Murphy for Filing a False Misbehavior Report**

Plaintiff asserts that CO Murphy violated his 14th and 8th Amendment rights "by falsifying a misbehavior report by maliciously and sadistically causing harm in relation to the ordinary incident of prison life." See Amended Complaint ("AC") [#4], "Paragraph ("Par.") 6." The remainder of "Paragraph 6" concerns CO Murphy's

allegedly excessive use of force against Plaintiff and provides no further particulars about the alleged falsification. During his deposition, Plaintiff testified that he did not know why CO Murphy might have filed a false report against him. See Deposition Transcript of Michael Frederick ("Frederick Tr.") at 69:16-21, attached as Exhibit A to the Declaration of Bernard Sheehan, Esq. [#52-3].

Defendants argue that the filing of a false misbehavior report is not an actionable constitutional claim. See Freeman v. Rideout, 808 F.2d 949, 952 (2d Cir. 1986) ("An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."), cert. denied, 485 U.S. 982 (1988); see also Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997). Instead, to maintain a viable constitutional claim against a correction officer for filing a false misbehavior report, the inmate must be able to show either that (1) as a result of the report, he was disciplined without due process of law; or (2) the report was issued in retaliation for the inmate's exercise of a constitutionally protected right. Montero v. Crusie, 153 F. Supp.2d 368, 376 n.3 (S.D.N.Y. 2001) (citing Jones v. Coughlin, 45 F.3d 677, 679-80 (2d Cir. 1995) (discussion Freeman, supra and Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988)).

With regard to the first exception, Frederick has argued that he was not able to mount a meaningful challenge to the misbehavior report because there were procedural defects during the ensuing disciplinary hearing. However, as discussed further below, the Court finds that Frederick has failed to raise a triable issue of fact with regard to his due process claim based on the disciplinary hearing. Therefore, his false misbehavior claim also must fail. See Taylor v. Macomber, No. 97 Civ. 4127(DAB), 1999 WL 349696, at *4 (S.D.N.Y. May 27, 1999) ("As there is no allegation of either retaliation or a constitutionally defective disciplinary hearing, Plaintiff's due process claim, that [the prison employee] violated his due process rights when he filed a false misbehavior report against him, is dismissed.").

With regard to the second instance where a misbehavior report may be actionable, the plaintiff must demonstrate that it was filed in retaliation for engaging in constitutionally protected activity. Frederick's pleadings suggest that CO Murphy was upset about the "altercation" Frederick had, several weeks prior to the use of force incident, with Nurse Allen; and that CO Murphy, by assaulting him and filing the false misbehavior report, was "making good" on his threat that he would "be back for" Plaintiff. Even assuming that CO Murphy had a retaliatory motive, Plaintiff has failed to assert, as an underlying matter, that the retaliation was in response to any constitutionally protected activity by Plaintiff,

-10-

much less that Plaintiff actually had engaged in any constitutionally protected activity. See Allen v. City of N.Y., 480 F. Supp.2d 689, 722 (S.D.N.Y. 2007) (dismissing inmate's claim based on false misbehavior report because, although inmate seemed to suggest that report was retaliatory, he failed to assert, as an underlying matter, that he engaged in any constitutionally protected activity).

### C.    Due Process Claim Against Acting Supt. Sheahan

Plaintiff asserts that Acting Supt. Sheahan violated his due process rights by failing to ensure that he was  provided with certain documents at the disciplinary hearing held with regard to CO Murphy's allegedly false misbehavior report. See Amend. Compl., "Par. 9." In particular, Plaintiff asserts that he was entitled to receive "unusual incident reports", "use of force reports", "'to/from' memoranda", and photographs taken after the use of force incident. See id. However, Supt. Sheahan did not conduct the disciplinary hearing. Rather, Commissioner's Hearing Officer James Esgrow ("CHO Esgrow") presided over the hearing. See Transcript of Tier III Hearing ("Hearing Tr.") at D000036, attached as Exhibit ("Ex.") B to the Declaration of Bernard Sheahan, Esq. [#52-3]. The Court reads Plaintiff's allegations to suggest that Acting Supt. Sheahan is liable based upon his supervisory position over CHO Esgrow, and based upon the fact that he affirmed CHO Esgrow's disciplinary ruling. As discussed further below, the Court agrees

-11-

with Defendants that Plaintiff has not established an adequate basis for liability against Acting Supt. Sheahan.

### 1.    Liability Based on Supervisory Position

Plaintiff's first theory of liability against Acting Supt. Sheahan is based on his supervisory position in the Southport chain of command. However, in a § 1983 action, "the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). Plaintiff's claim for money damages against Acting Supt. Sheahan "requires a showing of more than the linkage in the prison chain of command. . . ." Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). Accordingly, this theory of liability fails as a matter of law.

### 2.    Liability Based on the Affirmance of the Disciplinary Ruling

Acting Supt. Sheahan, by affirming CHO Esgrow's disciplinary ruling, only can be liable if CHO Esgrow violated Plaintiff's due process rights at the hearing. See Clyde v. Schoellkopf, 714 F. Supp.2d 432, 439 (W.D.N.Y. 2010) (where inmate's claim against superintendent was premised on official's affirmance of his disciplinary hearing, inmate had to show that hearing did not comport with due process) (citations omitted).

"With respect to any due process claim—substantive or procedural—'[t]he threshold issue is always whether the plaintiff

-12-

has a property or liberty interest protected by the Constitution.'" Gulley v. Roach, No. 02-CV-908S, 2004 WL 2331922, at *4 (W.D.N.Y. Oct. 15, 2004) (quoting Narumanchi v. Board of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988)). Here, the Court assumes for purposes of resolving this motion that Plaintiff had a protected liberty interest in avoiding confinement in SHU for six months (180 days) and receiving a recommendation for the loss of three months good time credits. See Gulley, 2004 WL 2331922, at *8 (citing, inter alia, Moore v. Selsky, 900 F. Supp. 670, 673 (S.D.N.Y. 1995)).

The Supreme Court, in striking a balance between accommodating an inmate's liberty interests and the specific correctional and institutional goals that disciplinary proceedings serve, see Wolff v. McDonnell, 418 U.S. 539, 562-72 (1974), has held that an inmate should ordinarily receive (1) advance written notice of the charges against him to enable him to marshal the facts and prepare a defense; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a short written statement presenting the reasons and evidence supporting any disciplinary action ultimately taken. Id. at 563-67.

Plaintiff does not contest the notice he received, or complain that he was not provided with a written statement of CHO Esgrow's

-13-

reasoning. Rather, Plaintiff asserts that in his amended complaint
that he was denied access to certain documents ("unusual incident
reports", "use of force reports", "'to/from' memoranda", and
photographs taken after the use of force incident) which would have
helped him prove his innocence. However, at the hearing, he did not
make any mention of this documentary material:

> Esgrow: Ok. Ok. Mr. Frederick if you have nothing else
> for me I'll close the proof and make my decision. Do you
> have anything else for me?
> Frederick: That's it.

Hearing Tr. at D000042. Later in the hearing, when CHO Esgrow
invited Plaintiff to make any objections to his disposition,
Plaintiff stated,

> I would like to object to the hearing under 254.3 or 4,
> Chapter V, assistance, assistance inadequate. And I would
> like to object to the formal testimony of the officer
> that you had to read him the report to recite the
> statement of what he did. That's my objections.

Id. at D000043. Again, Plaintiff did not allude in any way to the
documents he now claims were improperly withheld from him.

"Federal and state courts in this circuit have recognized that
an inmate's silence can constitute a waiver" of due process rights
he might have at a disciplinary hearing. E.g., Bedoya v. Couglin,
91 F.3d 349, 352 (2d Cir. 1996) (right to call witnesses) (citing,
inter alia, Gomez v. Coughlin, 528 N.Y.S.2d 722, 723 (3d Dep't
1988) (finding waiver where inmate "was specifically asked at the
hearing if he would like to have anything else considered, [and] he
replied in the negative"). Here, the disciplinary hearing proceeded

-14-

to a disposition without Plaintiff making any mention of the documents he now claims were critical to his case. Plaintiff failed to register any objection relating to the documents, despite being asked specifically if he wished CHO Esgrow to consider anything else, and he then acquiesced in CHO Esgrow's closing of the proof. The Court finds that these circumstances demonstrate a waiver of any right Plaintiff may have had to obtain the documents. See Bedoya, 91 F.3d 351, 353 (finding waiver of right to call witness where hearing officer asked inmate whether he wanted to explore any other issues during the hearing and inmate responded, "No, the only thing I can add is you can be sure this will never happen again"; inmate then acquiesced in decision to end the hearing). Therefore, the Court finds that there was no denial of due process by CHO Esgrow based on Plaintiff's lack of access to the documentary material cited above. Because the Court finds no error on the part of CHO Esgrow in this regard, the Court necessarily finds that Plaintiff's due process claim against Acting Supt. Sheahan fails as a matter of law. See, e.g., Black v. Selsky, 15 F. Supp.2d 311, 318 (W.D.N.Y. 1998) (because inmate's constitutional claims against hearing officer were meritless, and superintendent's alleged wrongdoing was based on his affirming the hearing officer's determination, there was no basis for inmates claims against superintendent).

D.   **Failure to Investigate by Acting Supt. Sheahan**

Plaintiff asserts that Acting Supt. Sheahan violated his constitutional rights by failing to conduct a proper investigation into two grievances Plaintiff had filed (SPT-48304-09; SPT-48380-09). According to Plaintiff, Acting Supt. Sheahan "didn't do a proper investigation . . . [o]f finding out why the area supervisor [Sgt. Holton] wasn't videotaping the—the frisk of the company . . . because they didn't have no [sic] video monitors in this jail." Frederick Tr. at 64:23-65:9. Plaintiff went on to explain that although there are video monitors in certain areas, such as the visitation room, there are no video monitors in any of the galleries. Id. at 65:7-18. Based on Plaintiff's own testimony, it would have been impossible for Sgt. Holton, the area supervisor, to videotape the gallery frisk because videotaping apparatus was not available on the gallery. Therefore, it would have been pointless for Acting Supt. Sheahan to inquire as to why the gallery frisk was not being videotaped.

Plaintiff also assigns liability to Acting Supt. Sheahan in connection with investigating his grievance that CO Murphy filed a false misbehavior report against him. Plaintiff believes that he should have been found not guilty because the whole incident was frivolous, and Acting Supt. Sheahan should have seen "it was a setup[.]" Frederick Tr. at 65:19-66:2.

-16-

"[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." Shell v. Brzezniak, 365 F. Supp.2d 362, 370 (W.D.N.Y. 2005) (citations omitted); see also Faison v. Hash, No. 03-CV-6475P, 2004 WL 944523, at *3 (W.D.N.Y. Apr. 23, 2004) ("Grievance procedures are the internal procedures and requirements of the Department of Correctional Services, and as such, prison inmates neither have a constitutionally protected right to a grievance procedure[.]") (citing Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 138 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); other citations omitted). Essentially, Frederick is claiming that Acting Supt. Sheahan's failure to decide his grievance in his favor violated his constitutional rights. Such a claim does not form the basis for § 1983 relief. See, e.g., Espinosa v. McCabe, No. 10-CV-497 (MAD/DRH), 2012 WL 4108884, at *16 (N.D.N.Y. Aug. 28, 2012) ("[T]o the extent Espinosa complains about the mechanics of how his grievance was initiated, investigated, or decided, such contentions are meritless."); Faison, 2004 WL 944523, at *3 (dismissing inmate's § 1983 claim against prison official regarding investigation into a grievance where inmate did not allege "he failed to get the process he was

-17-

due" but was "claiming only that the result he got was not what he wanted").

### D. **Personal Involvement by Acting Supt. Sheahan and Sgt. Holton**

Defendants argue that Plaintiff's claims stemming from the UOF incident must be dismissed as to Sgt. Holton and Acting Supt. Sheahan because he has failed to raise a genuine issue of material fact as to these officer's personal involvement in the incident. The claims regarding Acting Supt. Sheahan have been discussed above in Sections IV.C and IV.D. Therefore, only Sgt. Holton's liability will be discussed below.

In his amended complaint, Plaintiff asserts that Sgt. Holton violated his Eighth Amendment rights by "maliciously and sadistically causing harm to [Plaintiff] by not supervising the gallery and witnessing all inmates being escorted out of our cell [sic], by the officers conducting the institutional search. The force used was not a necessary part of prison discipline." Amend. Compl., "Par. 8". At his deposition, Plaintiff explained that he was suing Sgt. Holton because he was the area supervisor. Frederick Tr. at 66:16-18. Plaintiff admitted that, in one of his interrogatory responses, Sgt. Holton stated that he did not see Plaintiff. Instead, Sgt. Holton indicated that he had come onto the gallery but had left and was not there during the use-of-force incident. Id. at 66:19-25. Plaintiff testified that he saw Sgt. Holton walk by when the institutional frisk started, but he

-18-

admitted he did not see Sgt. Holton after that. Id. at 67:21-24; 67:1-20. Plaintiff stated, "I just felt that it was his duty to observe prisoners coming out of their cell[s] since there's no cameras on the gallery." Id. at 68:1-6.

The Court agrees with Defendants that Plaintiff essentially has conceded Sgt. Holton's lack of direct personal involvement in the use-of-force incident. However, Defendants have misread Plaintiff's amended complaint. Plaintiff's claim against Sgt. Holtin is, instead, a claim based on the failure to properly supervise his subordinate officers (who allegedly attacked and beat Plaintiff without provocation).

One of the ways that personal involvement can be shown, according to Second Circuit case law, is where the defendant is grossly negligent in supervising subordinates who committed unconstitutional acts. Colon, 58 F.3d at 873. To support a finding of personal involvement based on a failure to supervise, the fourth Colon factor, Plaintiff must show that Sgt. Holton "knew or should have known that there was a high degree of risk that [his subordinates] would behave inappropriately . . ., but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to [Plaintiff]." Poe v. Leonard, 282 F.3d 123, 142 (2d Cir. 2002) (citing, inter alia, McCann v. Coughlin, 698 F.2d 112, 125 (2d Cir.

1983) (holding that a prison commissioner and superintendent could be held liable for their gross negligence and deliberate indifference to the constitutional rights of inmates, as indicated by their having actual or constructive notice that unconstitutional practices were taking place, and their failure to act on the basis of this information)).

Plaintiff essentially is arguing that, in light of the fact that there are no video cameras located in the  galleries which would have permitted supervision of the corrections officers performing institutional searches, it was grossly negligent for Sgt. Holton not to personally supervise his subordinate officers while they conducted such searches so that he could ensure that they not utilizing excessive force against the inmates. At this juncture, the Court declines to grant summary judgment in Sgt. Holton's favor as to this claim, since he did not specifically address or move to dismiss the failure to supervise claim.

**V.   Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment is granted in part and denied in part. Defendants' request to dismiss the entire amended complaint because it alleges only official capacity claims against Defendants is **denied as moot** in light of Plaintiff's recent, unopposed amendment of the amended claim to specifically indicate that he is suing all Defendants in their individual capacities.

Defendants' request to dismiss Plaintiff's claims against Defendants in their official capacities is **granted.**

Defendants' request to dismiss Plaintiff's claims against Acting Supt. Sheahan (failure to investigate grievances and supervisory liability for alleged due process errors by CHO Esgrow during the disciplinary hearing) based on their lack of personal involvement is **granted.** Defendants' request to dismiss Plaintiff's claim against Sgt. Holton (failure to supervise) is **denied without prejudice with leave to renew**. Accordingly, Acting Supt. Sheahan is terminated as a Defendant from this action.

Defendants' request to dismiss the due process claim against CO Murphy for filing a false misbehavior report is **granted.**

The following claims and Defendant **remain pending**: excessive use of force in violation of the Eighth Amendment against CO Vandergrift, CO Murphy, CO Robinson, and CO Robyck; failure to supervise against Sgt. Holton.

The Clerk of the Court is requested to terminate Acting Supt. Sheahan as a defendant and to amend the caption accordingly.

> **SO ORDERED.**

> **S/Michael A. Telesca**

_____

HON. MICHAEL A. TELESCA
United States District Judge

DATED:     July 29, 2014
           Rochester, New York