```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

MICHAEL FREDERICK,

              Plaintiff,          **DECISION AND ORDER**
    -vs-                                   **No. 6:10-cv-06527(MAT)**

MICHAEL SHEAHAN, et al.,

              Defendants.

## I. Introduction

Pro se plaintiff Michael Frederick ("Frederick" or "Plaintiff"), an inmate in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while in DOCCS' custody at Southport Correctional Facility ("Southport"). In his amended complaint (Dkt #4), Plaintiff names the following individual as being responsible for the constitutional violations alleged: Corrections Officer Mark Vandergrift ("CO Vandergrift"); CO Patrick Murphy ("CO Murphy"); CO Michael Robyck ("CO Robyck"); CO J. Robinson ("CO Robinson"); Corrections Sergeant D. Holton ("Sgt. Holton"); and Acting Superintendent Michael Sheahan ("Acting Supt. Sheahan") (collectively, "Defendants"). The Court granted in part and denied in part Defendants' first motion for summary judgment. In particular, the Court dismissed all of the official-capacity claims against Defendants, all of the claims against Acting Supt. Sheahan, and the claim against CO Murphy for filing a false misbehavior

report. Although the Court denied Defendants' request to dismiss Plaintiff's claim against Sgt. Holton for failure to supervise, the denial was without prejudice with leave to renew. Sgt. Holton now has re-filed his motion for summary judgment. (Dkt #68). Plaintiff filed. (Dkt #). Sgt. Holton filed a reply. (Dkt #). Plaintiff filed a sur-reply in letter form. (Dkt # ).

## II. Factual Background

The following factual summary is based on the pleadings and the parties' submissions in conjunction with the two summary judgment motions. The facts are viewed in the light most favorable to Plaintiff, as non-movant.

On December 2, 2009, Plaintiff was locking on C-11 Gallery, part of C-Block, Third Floor, at Southport. That day, all of the inmates on C-11 Gallery were ordered to submit to a "Level III" institutional search of the gallery. Officer Frisbee, who is not a party to this action, and a second, as-yet unidentified officer, came to Plaintiff's cell and ordered him to turn around to be handcuffed. After Plaintiff was handcuffed, the cell door opened, and he waited to follow the officers' commands. Instead, Plaintiff says, he was shoved away from the door and pushed so he fell on the bed. Turning around, Plaintiff saw CO Vandergrift, who punched Plaintiff in the face multiple times, while several officers (CO Murphy, CO Robyck, and CO Robinson) held his ankles, legs, and feet. The officers then began striking Plaintiff on his bare feet

with their batons. Plaintiff estimates that this assault lasted for approximately 5 minutes. CO Vandergrift, CO Murphy, CO Robyck, and CO Robinson then brought him to the front of his cell, where CO Vandergrift "wrapped his hand around [Plaintiff's] neck and started choking him until [Plaintiff] passed out." Plaintiff's Declaration ("Pl's Decl."), ¶ 9.

After that, Plaintiff "remembered being dragged down the company and brought to a shower stall." Id. His injuries were photographed, and he underwent a medical exam at the facility infirmary. In the section of the "Unusual Incident Report ("UIR")" titled "Medical Report," DOCCS medical staff described Plaintiff's injuries as follows: A 4-inch by 3-inch red mark on the left side of his neck with no observed swelling, bruising, pain, welts or open areas; a bloodshot left eye, with no swelling, bruises, or pain noted; complaints of pain in left ankle and left wrist with no sign of injury noted in either area.

In his declaration submitted in support of the instant summary judgment motion, Sgt. Holton relates that just prior to the use-of-force incident, he was supervising the inmates on C-11 Gallery being prepared for the gallery frisk. Declaration of Donald Holton ("Holton Decl.") (Dkt #68-3) ¶ 7. While Sgt. Holton was answering a question from another inmate about the gallery frisk, he was notified about a "use of force" in C-11-13, Plaintiff's cell, and responded to the area. Upon his arrival, Sgt. Holton "ordered

[Plaintiff] to comply with the officers' instructions and to stop struggling, but [Plaintiff] continued to struggle aggressively." Id. ¶ 9. Sgt. Holton observed CO Murphy "use[ ] body holds to force [Plaintiff] back into his cell and onto his bed[,]" id. ¶ 11. CO Robinson and CO Robyck "then arrived to assist in the use of force." Id. ¶ 12. According to Sgt. Holton, "CO Murphy and CO Robinson used body holds to gain control of Mr. Frederick[,]" id. ¶ 13, and "[a]fter control was gained, CO Robyck applied leg restraints to [him]." Id. ¶ 14. CO Murphy then assisted Plaintiff to his feet and out of the cell. Id. ¶ 15. Sgt. Holton indicates that Plaintiff was escorted to the shower area "without incident." Id.

**III. General Legal Principles**

In an action under 42 U.S.C. § 1983, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages. . . . .'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Respondeat superior cannot form the basis of liability under Section 1983. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). Thus, a Section 1983 defendant "may not be held liable for damages for constitutional violations merely because he held a high position of authority." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Rather, Section 1983 imposes liability "only

upon those who actually cause a deprivation of rights[.]" <u>Wright</u>, 21 F.3d at 501.

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). In determining whether summary judgment is appropriate, the reviewing court "resolve[s] all ambiguities and draw[s] all reasonable inferences against the moving party." <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (2d Cir. 1997) (citing <u>Cifarelli v. Village of Babylon</u>, 93 F.3d 47, 51 (2d Cir. 1996)).

**IV.     Discussion**

In his amended complaint, Plaintiff asserts that Sgt. Holton violated his Eighth Amendment rights by "maliciously and sadistically causing harm to [Plaintiff] by not supervising the gallery and witnessing all inmates being escorted out of our cell [sic], by the officers conducting the institutional search. The force used was not a necessary part of prison discipline." Amended Complaint ("Compl."), "Par. 8" (Dkt #). At his deposition, Plaintiff explained that he was suing Sgt. Holton because he was the area supervisor. (Frederick 66:16-18). Plaintiff admitted that, in one of his interrogatory responses, Sgt. Holton stated that he

did not see Plaintiff. Instead, Sgt. Holton indicated that he had come onto the gallery but had left and was not there during the use-of-force incident. (Id. 66:19-25). Plaintiff testified that he saw Sgt. Holton walk by when the institutional frisk started, but he admitted he did not see Sgt. Holton after that. (Id. 67:21-24; 67:1-20). Plaintiff stated, "I just felt that it was his duty to observe prisoners coming out of their cell[s] since there's no cameras on the gallery." (Id. 68:1-6).

In its previous order, the Court noted that Plaintiff "essentially ha[d] conceded Sgt. Holton's lack of direct personal involvement in the use-of-force incident" but observed that Defendants had misinterpreted Plaintiff's amended complaint, which alleges that Sgt. Holton is liable due to his failure to properly supervise his subordinate officers for attacking Plaintiff without provocation. As discussed further below, the Court concludes that Plaintiff has a viable claim against Sgt. Holton based on his failure to supervise his subordinates (CO Vandergrift, CO Murphy, CO Robyck, and CO Robinson) as well as a claim based on Sgt. Holton's failure to intervene in what Plaintiff contends was an excessive use of force.

While supervisory officials may not be held liable merely because they held a position of authority at the time of the alleged wrongs, Black, 76 F.3d at 74, they may be found "personally involved" if, e.g., they participated directly in the

constitutional violation; were grossly negligent in supervising subordinates who committed the unconstitutional acts; or exhibited deliberate indifference to inmates' rights by failing to act on information indicating that unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

A corrections officer can be held liable under § 1983 for failing to intervene in a situation where excessive force is being used against a prisoner by another corrections officer. See O'Neill v. Krzeminksi, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.") (citations omitted). To establish liability based on an officer's failure to intervene, a plaintiff must demonstrate that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill, 839 F.2d at 11-12; other citations omitted).

Under the facts of this case, Plaintiff's failure to supervise claim overlaps with his failure to intervene claim against Sgt. Holton. Even if Sgt. Holton was not present at the time that

Plaintiff alleges he was shoved away from the door of his cell and punched in the face by saw CO Vandergrift, Sgt. Holton's declaration indicates that he was present during some part, if not most, of the use-of-force incident in Plaintiff's cell. Sgt. Holton states that after being notified about the use-of-force in C-11-13, he went to that cell and "ordered [Plaintiff] to comply with the officers' instructions and to stop struggling[.]" Holton Decl. ¶ 9. According to Sgt. Holton, because Plaintiff continued to "struggle aggressively," CO Murphy "use[ ] body holds to force [Plaintiff] back into his cell and onto his bed[,]" id. ¶ 11. CO Robinson and CO Robyck "then arrived to assist in the use of force." Id. ¶ 12. Sgt. Holton watched as "CO Murphy and CO Robinson used body holds to gain control of" Plaintiff. Id. ¶ 13. Then, Sgt. Holton observed CO Robyck apply leg restraints, following which Plaintiff was "assisted . . . to his feet[.]" Id. ¶¶ 14-15." Id. ¶ 23.

Based on the apparent duration of Sgt. Holton's presence during the use-of-force, Plaintiff has certainly raised a genuine issue of material fact as to whether Sgt. Holton had a realistic opportunity to intervene and prevent the alleged harms from continuing. With regard to whether a reasonable person in Sgt. Holton's position would know that Plaintiff's constitutional rights were being violated, it was clearly established at the time of the incident that a prisoner has the constitutional right to be free from unreasonable searches or excessive force by prison

officials. The Court notes that the injuries sustained by Plaintiff, which were observed and documented by DOCCS' medical staff, are not inconsistent with Plaintiff's assertion that he was choked by CO Murphy (the welt on his neck and bloodshot eye) and struck on his ankles and feet with batons (pain in his ankle area). Moreover, CO Murphy's description of how the event occurred does not account for any of Plaintiff's injuries. According to CO Murphy, he only used a "body hold" to force Plaintiff to the back wall after Plaintiff purportedly attempted to "head-butt" him. Therefore, the Court finds that there are genuine issues of material fact as to whether Plaintiff's constitutional right to not be subjected to excessive force by prison officials was violated during the gallery frisk and use-of-force incident in his cell. Finally, based on Sgt. Holton's declaration, he apparently did not take any steps to intervene in his subordinates' use of force and restraint of Plaintiff. Accordingly, Sgt. Holton's motion for summary judgment with respect to Plaintiff's claims against him based on the failure to supervise and the failure to intervene is denied.

**V.   Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Sgt. Holton is denied. Sgt. Holton will remain a defendant in this case, and Plaintiff's claims against Sgt. Holton based on

his failure to supervise and failure to intervene will be allowed to proceed.

    **SO ORDERED.**

                              S/Michael A. Telesca

                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge

DATED:    July 13, 2015
            Rochester, New York